FLETCHER, Circuit Judge:
 

 This is an appeal from an order of the district court vacating a bankruptcy court judgment and vacating a stay of California ■ state court proceedings. The order stated that the bankruptcy court did not have jurisdiction to determine appellant Castler-ock Properties’ counterclaims. We affirm.
 

 I. BACKGROUND
 

 Castlerock filed a Chapter 11 proceeding in bankruptcy court, thereby automatically staying a state court contract action involving Castlerock and Piombo. Piombo filed for relief from the automatic stay. Cast-lerock filed an answer incorporating state law contract counterclaims against Piombo. The bankruptcy judge elected to try the counterclaims but did not enter an order denying the relief from stay.
 

 Although Piombo conceded subject matter jurisdiction, it moved to dismiss or sever the counterclaims questioning the propriety of deciding the counterclaims in a relief from stay proceeding. When the motion was denied, Piombo filed an answer to the counterclaims, and later filed a Proof of Secured Claim in the bankruptcy.
 

 Piombo continued to object to trying the counterclaims in a relief from stay proceeding, but moved in the alternative to be allowed to bring its own counterclaim. The bankruptcy court denied both alternatives.
 

 At the pretrial conference, Piombo objected to the bankruptcy court’s jurisdiction, citing
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (Marathon), which had been decided in the interim.
 
 [1]
 
 Piombo then moved the district court to withdraw its reference to the bankruptcy court, arguing that the jurisdiction of the court over the state law claims was unconstitutional. This motion was summarily denied. The bankruptcy court then tried the relief of stay issue and Castlerock’s contract counterclaims against Piombo and entered judgment for Castler-ock.
 

 The district court vacated the judgment on stipulation of the parties in order to determine whether the bankruptcy court could properly enter judgment. Piombo filed a motion for trial
 
 de novo;
 
 Castlerock filed a cross-motion for entry of judgment. After hearing, the district court entered its order holding that the bankruptcy court did not have jurisdiction to determine the substantive issues and vacating the automatic stay. Castlerock timely appealed.
 

 II. APPLICABLE LAW
 

 After the Supreme Court removed jurisdiction from the bankruptcy courts,
 
 see Marathon,
 
 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, the Judicial Council of the United States approved a model “Emergency Rule” that might be adopted by district courts for use upon the expiration of the stay in
 
 Marathon
 
 until Congress enacted remedial legislation.
 
 Lucas v. Thomas (In
 
 
 *161
 

 re Thomas),
 
 765 F.2d 926, 928 n. 2 (9th Cir.1985). When the
 
 Marathon
 
 stay expired in December 1982, all the district courts in the Ninth Circuit adopted the model rule, some with minor variations.
 
 Id.
 
 Northern District General Order 24 [Emergency Rule] went into effect on December 24, 1982.
 

 While this case was pending before the district court, the President signed into law the “Bankruptcy Amendments and Federal Judgeship Act of 1984” (1984 Act). Section 122 of the law provided that it would “take effect” on the date of enactment [July 10, 1984], P.L. 98-353 § 122(a), with exceptions for certain provisions that would not apply to pending cases.
 
 Id.
 
 § 122(b). The implication is that the balance of the act does apply to cases pending on July 10, 1984. However, the parties appear to be in some doubt as to whether this court should apply the 1984 Act or the Emergency Rule.
 

 Absent manifest injustice or congressional intent to the contrary, we generally apply the law as it exists at the time the decision is rendered.
 
 Rubin v. Belo Broadcasting Corp., (In re Rubin),
 
 769 F.2d 611, 614 (9th Cir.1985). Thus, we have applied the 1984 Act to cases pending on July 10, 1984.
 
 Id.
 
 at 615 n. 4. Other circuits have done the same.
 
 In re Amatex Corp.,
 
 755 F.2d 1034, 1037 (3d Cir. 1985);
 
 Carlton v. Baww, Inc.,
 
 751 F.2d 781, 787 n. 6 (5th Cir.1985);
 
 Creasy v. Coleman Furniture Corp.,
 
 763 F.2d 656, 659-60 (4th Cir.1985). We apply the 1984 Act in this case.
 

 III. BANKRUPTCY COURT’S JURISDICTION
 

 The district court’s order stated that the bankruptcy court did not have jurisdiction to “determine” Castlerock’s state law claim against Piombo. We read this to mean simply that the bankruptcy court could not properly enter judgment. Thus, the question on appeal is whether, under the 1984 Act, the bankruptcy court had jurisdiction to enter final judgment on Castlerock’s state law counterclaims. We review questions of jurisdiction
 
 de novo. South Delta Water Agency v. U.S. Dept. of Interior,
 
 767 F.2d 531, 535 (9th Cir. 1985).
 

 The role of the bankruptcy court under the 1984 Act is succinctly described in
 
 Production Steel, Inc. v. Bethlehem Steel Corp. (In re Production Steel, Inc.),
 
 48 B.R. 841 (M.D.Tenn.1985).
 

 In noncore matters, the bankrupcty court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master. In noncore matters, the bankruptcy court may not enter final judgments without the consent of the parties, and its findings of fact and conclusions of law in noncore matters are subject to de novo review by the district court.... In contrast to the bankruptcy court’s authority in noncore cases, the bankruptcy court may enter final judgments in so-called core cases, which are appealable to the district court. The standard for appeal of core matters of the district court is the same as in other civil matters appealed from the district court to the circuit courts of appeal. 28 U.S.C. § 158(c).
 

 Id.
 
 at 844. Thus, the “essence of the jurisdictional system” is the distinction between core and noncore matters.
 
 Lesser v. A-Z Associates, Inc. (In re Lion Capital Group),
 
 46 B.R. 850, 852 (Bankr.S.D.N.Y. 1985).
 

 28 U.S.C. § 157(b)(2), which enumerates the proceedings designated as “core,” consists of two “catch-all” provisions, § 157(b)(2)(A) and (O), and a list of more specific provisions. § 157(b)(2)(B)-(N). King,
 
 Jurisdictional Procedure Under the Bankruptcy Amendments of 1984,
 
 38 Vand.L.Rev. 675, 687-88 (1985). The only one of the specific provisions which might apply to Castlerock’s counterclaims is section 157(b)(2)(C), “counterclaims by the estate against persons filing claims against the estate.” However, it seems unfair under the facts of this case to categorize the counterclaims as falling within this provision. The counterclaims were asserted before the Proof of Claim was filed. Piombo
 
 *162
 
 would not have filed the Proof of Claim if the bankruptcy court had declined jurisdiction over the counterclaims. Nor are we persuaded that they fall within either of the catch-all provisions, “matters concerning the administration of the estate,” § 157(b)(2)(A) or “other proceedings affecting the liquidation of the assets of the estate,” § 157(b)(2)(0). State law contract claims that arguably fall within these catch-all provisions have been held to be “noncore” “related proceedings” under § 157(c).
 
 See K-Rom Construction Corp. v. Behling (In re K-Rom Construction Corp.),
 
 46 B.R., 745, 749 (S.D.N.Y.1985);
 
 Mohawk Industries, Inc. v. Robinson Industries, Inc.,
 
 46 B.R. 464, 465-66 (D.Mass. 1985);
 
 Cameron v. Anderson (In re American Energy, Inc.),
 
 50 B.R. 175, 178-79 (Bankr.D.N.D.1985);
 
 Morse Electric Co., Inc. v. Logicon, Inc. (In re Morse Electric Co., Inc.),
 
 47 B.R. 234, 237 (Bankr.N.D.Ind. 1985).
 
 Cf. Harry C. Partridge, Jr. & Sons, Inc. v. M & R Construction Corp. (In re Harry C. Partridge, Jr. & Sons, Inc.),
 
 48 B.R. 1006, 1010 (Bankr.S.D.N.Y. 1985) (state law contract claim characterized as core proceeding where it fit the description of § 157(b)(2)(E), one of the specific provisions).
 

 Further, we are persuaded that a court should avoid characterizing a proceeding as “core” if to do so would raise constitutional problems.
 
 See Mohawk,
 
 46 B.R. at 466;
 
 Morse Electric,
 
 47 B.R. at 237-38. The apparent broad reading that can be given to § 157(b)(2) should be tempered by the
 
 Marathon
 
 decision.
 
 American Energy,
 
 50 B.R. at 178.
 

 This circuit has interpreted
 
 Marathon
 
 as depriving the bankruptcy court of jurisdiction “to make final determinations in matters that could have been brought in a district court or a state court.”
 
 Thomas,
 
 765 F.2d at 929. However, if the district court can review
 
 de novo,
 
 giving no deference to findings of the bankruptcy judge, initial proceedings can be held before a non-Article III court.
 
 Id. Cf. Briney v. Burley (In re Burley),
 
 738 F.2d 981, 986 (9th Cir.1984) (non-Article III Bankruptcy Appeals Panel constitutional where
 
 de novo
 
 review by court of appeals). Accordingly, we hold that state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are related proceedings under § 157(e) even if they arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional. Since we find the case before us a “related proceeding,” the district court was correct in ruling that the bankruptcy court had no jurisdiction to enter judgment. 28 U.S.C. § 157(c)(1).
 

 Castlerock, however, contends that the bankruptcy court nonetheless had jurisdiction because Piombo consented to the jurisdiction. Under the 1984 Act, the bankruptcy court is allowed to enter judgment in related proceedings with the consent of the parties. 28 U.S.C. § 157(c)(2). Castler-ock argues that by filing its Proof of Claim, Piombo impliedly consented to the jurisdiction of the bankruptcy court. Although the district court found this not to be the case, implied consent is a question of law and is reviewed
 
 de novo
 
 by this court.
 
 See Buttonwillow Ginning Co. v. Federal Crop Insurance Corp.,
 
 767 F.2d 612, 613 (9th Cir.1985).
 

 Castlerock relies on well-settled law that a creditor consents to jurisdiction over related counterclaims by filing a proof of claim.
 
 Northern Mutual Life Ins. Co. v. Axton (In re Axton),
 
 641 F.2d 1262, 1268 (9th Cir.1981);
 
 Peters v. Lines,
 
 275 F.2d 919, 925 (9th Cir.1960). However, Castlerock cites no case in which the filing of the proof of claim followed the bankruptcy court’s assertion of jurisdiction over the counterclaims despite objections from the creditor. The purpose of the rule, to prevent a bankruptcy trustee from having “to split a cause of action by defending against the claim in the summary proceedings and then seeking affirmative relief in a plenary suit,”
 
 Peters,
 
 275 F.2d at 925, is not served by forcing the creditor to file a proof of
 
 *163
 
 claim as a defensive maneuver, thereby-conferring jurisdiction on the bankruptcy court. Asserting an affirmative defense does not constitute consent.
 
 Mohawk,
 
 46 B.R. at 466. By analogy, Piombo’s filing the proof of claim should not be deemed consent.
 
 Cf. Cline v. Kaplan,
 
 323 U.S. 97, 99, 65 S.Ct. 155, 156, 89 L.Ed. 97 (1944) (no consent where claimant resisted petition for turnover order and made formal protest against exercise, of summary jurisdiction);
 
 Dexter v. Gilbert (Matter of Kirchoff Frozen Foods, Inc.),
 
 496 F.2d 84, 86 (9th Cir. 1974) (no consent when no relief sought in bankruptcy court “save in the event the trustee first prevailed in the dispute initiated by him.”)
 

 IV. TERMINATION OF STAY
 

 The bankruptcy court did not act on Piombo’s original request for relief from stay.
 
 [2]
 
 The district court exercised its discretion to terminate the stay. We review for abuse of discretion.
 
 MacDonald v. MacDonald (In re MacDonald),
 
 755 F.2d 715, 716 (9th Cir.1985).
 

 11 U.S.C. § 362(d)(1) allows relief from the automatic stays provided by § 362(a) for “cause.” “Because there is no clear definition of what constitutes ‘cause’, discretionary relief from the stay must be determined on a case by case basis.” Mac
 
 Donald,
 
 755 F.2d at 717.
 

 In this case, several factors could constitute “cause.” A clear congressional policy exists to give state law claimants a right to have claims heard in state court.
 
 See
 
 28 U.S.C. § 1334(c). If the case were brought today, it would be heard in state court.
 
 Id.
 
 § 1334(c)(2). More importantly, a state court trial is about to take place involving the very same issues. Under these circumstances, the district court did not abuse its discretion in terminating the stay, thus allowing the entire case to- be determined in one forum.
 

 AFFIRMED.
 

 [1]
 

 . In
 
 Marathon,
 
 the Supreme Court held that the portion of the Bankruptcy Act of 1978 which allowed a bankruptcy court to entertain and decide a state law contract claim over the objection of one of the parties violated Article III of the United States Constitution.
 
 See
 
 458 U.S. at 87, 102 S.Ct. at 2880 (plurality opinion), 91 (Rehnquist, J. concurring). The Court held that when dealing with rights not created by Congress, the essential attributes of judicial power must be retained in the Article III court.
 
 Id.
 
 at 81, 102 S.Ct. at 2876. The plurality noted a number of problems with the bankruptcy courts established by the 1978 Act including their broad subject matter jurisdiction, their exercise of all jurisdiction and all ordinary powers of the district courts, review of their decisions under the clearly erroneous standard, and the fact that they could enter final judgments on state law claims.
 
 Id.
 
 at 85-86, 102 S.Ct. at 2878-79.
 

 [2]
 

 . Castlerock claims an August 21, 1981 memorandum of hearing constituted a final order. There is nothing on the face of the memorandum to suggest it disposed of the relief from stay issue. Moreover, we find it incredible that the parties or the court would allow the issue to be litigated in trial in June, 1983, if it had been disposed of two years earlier.