**In re KOLD KIST BRANDS, INC., a California Corporation, Debtor.**

**Raymond J. SEDLACHEK, and Elizabeth Sedlachek, individually and as trustees of the Sedlachek Living Trust dated March 14, 1984, Appellants,**

v.

**NATIONAL BANK OF LONG BEACH, a National Banking Corporation, Appellee.**

No. CV 93–1578 DT.

United States District Court, C.D. California.

July 19, 1993.

Michael G. Fletcher, Frandzel & Share, Los Angeles, CA, for plaintiff/appellee National Bank of Long Beach, a National Banking Ass'n.

James L. Patison and J. Elliot McIntosh of McIntosh & Patison, Santa Ana, CA, for defendants/appellants Raymond J. Sedlachek and Elizabeth C. Sedlachek, individually and as trustees of Sedlachek Living Trust.

## ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER REMANDING THE ADVERSARY PROCEEDING

TEVRIZIAN, District Judge.

*Background*

Kold Kist Brands, Inc. ("Kold Kist") commenced bankruptcy proceedings by filing a petition under Chapter 11 of the United States Bankruptcy Code on October 5, 1992 (the "Bankruptcy Action"). Kold Kist's shareholders include Raymond J. Sedlachek and his wife Elizabeth Sedlachek (the "Sedlacheks"). The Sedlacheks also serve as trustees of Sedlachek Living Trust dated March 13, 1984 (the "Trust") (the Sedlacheks and the Trust collectively referred to as "Appellants"). The Trust is not a shareholder of Kold Kist.

On October 27, 1992, shortly after the Bankruptcy Action began, National Bank of Long Beach (the "Bank" or "Appellee") commenced a collection action (the "State Action") by filing a Complaint in the Superior Court of the State of California for the County of Los Angeles, against each of the Sedlacheks and also against the Trust by suing the Sedlacheks in their capacities as trustees of the Trust. The Bank filed the State Action to collect and recover on two separate and independent debts. The first debt consisted of a $350,000 note (the "Note") given to the Bank by the Trust, which was personally guaranteed by the Sedlacheks. The Note was only recently paid in full by the Sedlacheks. According to the Bank, the Note had no direct connection to Kold Kist, or the Bankruptcy Action, because it was simply a secured loan transaction between the Bank and the Trust. In connection with the Note, the Bank also sought judicial foreclosure of a first trust deed (the "Trust Deed") on commercial property that secures repayment of the Note to the Bank.

The second debt alleged in the State Action, allegedly arose from a written guaranty given to the Bank by the Trust (the "Trust's Guarantee") whereby the Trust guaranteed the payment of a $1,464,287 note and a $700,000 note by the debtor, Kold Kist. According to the Bank, the Trust's Guaranty to the Bank is the sole remaining claim to be litigated between the Bank and the Appellants.

On October 27, 1992, the Bank also filed an Application for Writ of Attachment (the "Application") in the State Action for the issuance for Right to Attach Orders against the Sedlachek Trust. On October 29, 1992, the state court issued a temporary protective order (the "Temporary Protective Order") preventing the Trust from disposing of or otherwise transferring ap-

proximately $756,000.00, which represents the settlement by the Trust of an eminent domain action brought by the County of San Diego to condemn property in northern San Diego County. The state court apparently issued the Temporary Protective Order after concluding, from the Bank's evidence, that a reasonable risk existed that the Trust would dispose of or transfer the $756,000.00 eminent domain proceeds to render them unavailable to levy or attachment by the Bank.

A hearing on the Application was set for January 7, 1993, in the state court and the Temporary Protective Order was set to expire on January 23, 1993, unless further extended by court order. The 16–day period between the January 7th, 1993 hearing and the expiration of the Temporary Protective Order on January 23, 1993, was designed to afford the Bank adequate time to levy and perfect its rights, in the event that a right to attach order was entered at the January 7th, 1993, attachment hearing.

On or about December 23, 1992, the State Action was removed in its entirety by Appellants to the United States Bankruptcy Court, Central District of California (the "Removed Action").

On December 30, 1992, the Bank filed a Motion to Remand the Removed Action to State Court or Abstain. In the alternative, the Bank's motion requested the bankruptcy court to immediately order the appointment of a receiver and issue a right to attach order.

Because of concerns over the missed receivership hearing set for December 24, 1992, and the upcoming hearing on the Bank's attachment Application on January 7, 1993, and the expiration of the Temporary Protective Order, the Bank also requested the bankruptcy court to hold a hearing on the Bank's Motion to Remand on shortened notice. The bankruptcy court granted the request and entered its order setting the matter for hearing on January 7, 1993. Verbal notice of the hearing date and time was given to the Appellants two days before the hearing. In addition, the record reflects that a copy of the bankruptcy court's order setting the matter for hearing on January 7, 1993, was faxed to the Trust on January 5, 1993. Appellants have not appealed from this order and do not directly challenge it on appeal.

In response to the Bank's Motion to Remand, Appellants filed a 21–page Opposition, including evidentiary declarations. Also, Appellants appeared at the January 7th, 1993, hearing represented by their attorneys, and presented their arguments in opposition to the Bank's Motion to Remand. The bankruptcy court took the matter under advisement to consider and study Appellants' Opposition, and on January 8, 1993, held a further telephonic hearing announcing its findings and decision to remand the Removed Action to the state court pursuant to the mandatory abstention provision set forth in 28 U.S.C. § 1334(c)(2). A written order remanding the Removed Action, in its entirety, to the state court, was entered on January 11, 1993 (the "Bankruptcy Court's Order"), after the bankruptcy court considered further objections and arguments by Appellants. The bankruptcy court found that the Removed Action, relating to the guaranty of the Trust for repayment of the debts of Kold Kist, is related to the Bankruptcy Action, but that the claims are "non-core" matters based upon the state law causes of action, which are related to a case under Title 11, but which do not "arise under" Title 11 or in a case filed under Title 11. The bankruptcy court also found that the Removed Action could not have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334(c)(2) and that the Removed Action can be timely adjudicated in a state forum of appropriate jurisdiction. The Bankruptcy Court's Order also dismissed and denied the Appellants' request for a continuance. On April 23, 1993, Appellants filed an Appeal from the Bankruptcy Court's Order, which is now before this Court.

*Discussion*

**A. Standard of Review**

 Conclusions of law made by a bankruptcy court are reviewed de novo. *In re Wolverton Assocs.*, 909 F.2d 1286 (9th

Cir.1990). Questions of bankruptcy court jurisdiction are reviewed de novo, including determinations that a proceeding is "core" or "non-core". *Matter of Lockard*, 884 F.2d 1171, 1174 (9th Cir.1989); *In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986).

### B. *Mandatory Abstention*

The general grant of jurisdiction in the district court for all bankruptcy cases and for certain related proceedings is found in 28 U.S.C. § 1334. Section 1334(b) provides: "The district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." Therefore, a state court case may be removed to the bankruptcy court if any claim or cause of action (1) arises under, (2) arises in, or (3) is related to a case under the Bankruptcy Code.

However, pursuant to 28 U.S.C. § 1334(c)(2): "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction...."

■ Under Section 1334(c)(2), seven elements are required to be present for mandatory abstention: (1) a timely motion; (2) a purely state law question; (3) a non-core proceeding that is merely "related to" the bankruptcy case; (4) a lack of independent federal jurisdiction absent the debtor's bankruptcy petition under Title 11; (5) that an action was commenced in a state court; (6) the state court action can be timely adjudicated; and (7) appropriate jurisdiction exists in the state forum. *In re World Solar Corp.*, 81 B.R. 603, 606 (Bkrtcy. S.D.Cal. 1988); *In re Baldwin Park Inn Assocs.*, 144 B.R. 475, 479 (C.D.Cal.1992).

Appellants appear to challenge the bankruptcy court's finding that the Removed Action is "related to" the Bankruptcy Action, but does not "arise under" Title 11 or "arise in" a case under Title 11. Pursuant to 28 U.S.C. § 157(b), matters that "arise under" or "arise in" a bankruptcy case are "core" proceedings in which the bankruptcy court is authorized to enter final judgments. "Core" proceedings, therefore, are those actions that generally have no existence outside of bankruptcy. All other proceedings are merely "related to" the bankruptcy case and are thus, "non-core".

■ "Non-core" proceedings are those proceedings that are "otherwise related to the case under title 11." 28 U.S.C. § 157(b)(3). A bankruptcy court's "related to" jurisdiction involves a proceeding, which has a "significant connection" to the debtor's bankruptcy but does not satisfy the "arising under" or "arising in" standard. *Turner v. Ermiger*, 724 F.2d 338, 341 (2nd Cir.1983).

■ "Arising under" jurisdiction applies to "any matter under which a claim is made under a provision of title 11." H.R.Rep. No. 595, 95th Cong., 2nd Sess. 445 (1977). " 'Arising Under' jurisdiction includes only those proceedings that involve a cause of action 'created or determined by a statutory provision of title 11.' " *In re Leco Enterprises, Inc.*, 144 B.R. 244, 248 (S.D.N.Y. 1992) (quoting *Spaulding & Co. v. Buchanan*, 131 B.R. 84, 88 (N.D.Ill 1990)). Matters arising under title 11 would include objections to confirmation of a plan under 11 U.S.C. § 1129 or actions to recover preferential transfers under 11 U.S.C. § 547. No such rights are alleged in the Removed Action. As such, in this Court's opinion, the bankruptcy court properly concluded that the Removed Action does not "arise under" Title 11.

■ "Arising in" jurisdiction generally refers to administrative matters that ensue after a case under the Bankruptcy Code has commenced. "Arising in" cases under Title 11 are those particular to the bankruptcy process, including such things as (1) counterclaims by the estate against per-

sons filing claims against the estate, (2) orders to turn over property of the estate, or (3) determinations of the validity, extent or priority of claims. *In re Eastport Assoc.*, 935 F.2d 1071, 1076–77 (9th Cir.1991); 1 Collier on Bankruptcy Section 3.01[1][c][v]; 28 U.S.C. § 157(b)(2). " 'Arising in' jurisdiction encompasses 'those administrative matters that arise only in bankruptcy cases'—matters not based on any right expressly created by title 11, but that would have no existence outside of bankruptcy." *In re Leco Enterprises, Inc.*, 144 B.R. at 248 (quoting *Spaulding & Co. v. Buchanan*, 131 B.R. at 88). In this Court's opinion, the bankruptcy court properly determined that the Removed Action did not "arise in" a case pending under Title 11 because it does not involve claims that are particular to the bankruptcy process, but instead, involves claims that are founded in state law theories of recovery.

■ Appellants contend that the Removed Action is a "core" proceeding pursuant to 28 U.S.C. § 157(c)(2)(A), as a matter concerning the administration of the estate, and pursuant to 28 U.S.C. § 157(c)(2)(O), as a proceeding affecting the liquidation of the assets of the estate, the adjustment of the debtor-creditor relationship, and the adjustment of the equity security holder relationship. However, Appellants' argument that these catch-all provisions transform the Removed Action into a "core" proceeding is erroneous and has been rejected by the Ninth Circuit. In *In re Castlerock Properties*, 781 F.2d at 162, the Ninth Circuit specifically rejected the broad application of the catch-all provisions holding "that state law contract claims that do not specifically fall within the categories of "core" proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)—(N) are related proceedings under Section 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, Sections 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter

final judgments that this court has held unconstitutional." Thus, in this Court's opinion, the Removed Action is not a "core" proceeding under the catch-all provisions set forth in 28 U.S.C. §§ 157(c)(2)(A) and 157(c)(2)(O).

Appellants attempt to utilize the catch-all provisions to argue that the Removed Action is a "core" proceeding that "arises in" the Bankruptcy Action because the Trust's speculative subrogation rights under 11 U.S.C. § 509 may be involved in the event that future events cause the Trust to actually pay the obligations to the Bank. In this Court's opinion, the Appellants' reliance on such speculative subrogation rights is too attenuated to render the Removed Action a "core" proceeding, which "arises under" Title 11. Therefore, the bankruptcy court properly determined that the Removed Action involves "non-core" matters that are "related to" the Bankruptcy Action but does not "arise under" nor "arise in" a case under Title 11.

The Bankruptcy Court's Order also found that the remaining elements under 28 U.S.C. § 1334(c)(2) were satisfied. Appellants do not appear to challenge these findings on appeal and this Court agrees with the bankruptcy court's findings as to these remaining elements.[1] Therefore, in this Court's opinion, the bankruptcy court correctly determined that the Removal Action came within the mandatory abstention provision set forth in 28 U.S.C. § 1334(c)(2) and should be remanded to the state court for lack of subject matter jurisdiction in the bankruptcy court.

### C. *Due Process*

■ Appellants argue that because they were only provided two days notice of the Bank's Motion to Remand, Appellants were denied the opportunity to conduct discovery and thus, denied due process. In this Court's opinion, this argument lacks merit. First, it appears that the issues involved in

**1.** In their brief on appeal, Appellants erroneously argue that the Bankruptcy Court's Order must be reversed because it failed to consider all of the factors for permissive abstention under 28 U.S.C. § 1334(c)(1) as listed in *In re Tuscon Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir.1990). However, the Bankruptcy Court's Order explicit-

ly stated that the bankruptcy court did not have jurisdiction under the mandatory abstention doctrine set forth in 28 U.S.C. § 1334(c)(2) not the permissive abstention provision set forth in 28 U.S.C. § 1334(c)(1). Therefore, Appellants' argument has no application to the instant appeal.

a motion to remand pursuant to 28 U.S.C. § 1334(c)(2) do not generally lend themselves to a factual discussion outside of the pleadings. Second, this Court notes, that Appellants have failed to identify any evidence that they would, or could, produce to .alter the Bankruptcy Court's Order. Third, as discussed previously, Appellants filed a 21–page Opposition to the Bank's Motion to Remand, appeared and argued at the hearing on the motion and apparently presented additional objections and arguments subsequent to the hearing. Therefore, in this Court's opinion, the Bankruptcy Court's Order should not be reversed on the ground that Appellants were only given two days in which to respond to the Bank's Motion to Remand.

Accordingly, this Court hereby **AFFIRMS** the Bankruptcy Court's Order of January 11, 1993, remanding the adversary proceeding, *National Bank of Long Beach v. Raymond J. Sedlachek, etc., et al.*, Central District of California Adversary No. LA 92–05484 KL, in its entirety, to the Superior Court of the State of California for the County of Los Angeles.

IT IS SO ORDERED.